# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

v.                                    Case Nos.: 3:08cr21/MCR
                                                     3:12cv542/MCR/CJK

**JAVIER AYALA,**

_____/

## ORDER and
## REPORT AND RECOMMENDATION

This matter is before the court upon the Government's motion to dismiss (doc. 149) Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as supplemented (docs. 137, 140). Defendant has filed a response (doc. 155) and he also has filed a motion requesting transcripts of the proceedings in this case (doc. 153). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the Government's motion to dismiss should be granted and Defendant's motion should be denied.

## **PROCEDURAL BACKGROUND**

Defendant was charged in a four count indictment with the following offenses: count one– interference with commerce by robbery; count two– possession of a firearm during and in relation to a crime of violence; count three– arson of a vehicle; and count four possession of a firearm by a convicted felon (doc. 1). Following a four day trial, the jury found Defendant guilty as charged (docs. 65, 69). The court sentenced Defendant to a term of 240 months imprisonment and ordered him to pay $14,409.55 in restitution and a $400 special monetary assessment (docs. 83, 110 at 15–19). Judgment was entered on August 1, 2008 (doc. 83).

Defendant filed a timely notice of appeal on the same date that judgement was entered (doc. 85). He raised two issues on appeal, each relating to jury instructions (doc. 127). The Eleventh Circuit Court of Appeals affirmed Defendant's conviction on September 30, 2009 (doc. 127), and the United States Supreme Court denied certiorari on December 6, 2010 (doc. 131).

On August 10, 2012,[1] Defendant filed a "Motion for Leave to file § 2255 Based on Medical Issues that Prevented Petitioner from Making the Deadline" in which he requested an additional ninety days beyond the date of that motion to file his motion to vacate pursuant to 28 U.S.C. § 2255 (doc. 133). In support of his request, Defendant claimed that he suffered a stroke on November 19, 2011 (*id*.). Defendant's motion was denied on September 6, 2012, as premature, and he was informed that the

---

[1] A *pro se* inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing. *See* Houston v. Lack, 487 U.S. 266 (1988) (holding that a *pro se* inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"). Defendant's motion was dated August 10 and received by the clerk on August 16, 2012.

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

court does not have jurisdiction to consider either the timeliness of a § 2255 motion or a defendant's entitlement to equitable tolling until the § 2255 motion is filed (doc. 134). The court also directed the clerk to send Defendant the proper form for filing a § 2255 motion (*id*. at 2). On September 10, 2012, the clerk received a document titled "Motion Letter for Leave to File a § 2255 Motion (for 90 days)" which was dated September 4, 2012 (doc. 135). In that motion, Defendant made the same request – that he be granted an additional ninety days to file his motion (*id*.). Relevant to the instant motion to dismiss, Defendant also attached copies of a document titled Admission Notification and three pages of Administrative notes from the Bureau of Prisons Health Services from November 19–21, 2011, which reflected that Defendant had apparently had a stroke and was unable to communicate (doc. 135 at 2–5). Defendant's motion was again denied and he was advised that before the court could rule on a motion for extension of time, he must submit his § 2255 motion on the proper form (doc. 136).

Defendant filed his § 2255 motion on November 5, 2012, raising two claims of ineffective assistance of counsel (doc. 137). First, he contends that counsel was ineffective because he failed to establish that Defendant's conscious flight was for another crime (*id*. at 3). Next he asserts that counsel failed to establish that Defendant was not aware of the charged offense in that he was not informed of the charged offense until after he reached the jail (*id*.). As relief, he asks "that the sentence and conviction be vacated amended to relect [sic] 922(a) Felon in Possession of a Firearm by correction of charges" (*id*. at 5).

On November 19, 2012, Defendant filed a "Motion under 28 U.S.C. § 2255 to Add Medical Documents by Amendment" (doc. 138). The attachments to this motion

are identical to four of the pages of documents appended to his second motion for extension of time (doc. 135). Through these documents, Defendant sought to prove the severity of his medical condition and incapacity and to excuse his late filing of his § 2255 motion (doc. 138). The court granted Defendant's motion and directed that the § 2255 motion be served on the Government (doc. 139).

On December 14, 2012, Defendant filed a "Motion to Supplement an [sic] 28 U.S.C. § 2255 by an Incorporated Memorandum of Law" by which he sought to add legal argument to his claims (doc. 140). The motion was granted and the Government was directed to address the contents of the memo in its response (doc. 144).

On March 25, 2013 the Government moved to dismiss Defendant's § 2255 motion as untimely (doc. 149), and it is this motion that is pending before the court. Defendant has responded in opposition to the motion (doc. 155).

## **STATEMENT OF FACTS**[2]

Two men, wearing jackets and masks to disguise their identities, robbed a Pensacola, Florida, cash advance store. One waved a silver revolver during the robbery. The men drove away from the store in a white van and were pursued by the police. After driving down a one-way street, they abandoned the van, attempted to set it on fire, and fled on foot. An officer with the Pensacola Police Department's K-9 unit, assisted by his dog, tracked the men to a residence. Shortly thereafter, officers stopped a vehicle on its way to that residence, and upon searching the vehicle, recovered a small silver revolver, a black jacket, and a skull cap. The officers

---

[2] The facts set forth herein are taken from the Eleventh Circuit's opinion in United States v. Ayala, 345 F. App'x 421, 422 (11th Cir. 2009), and are included only as relevant to this court's brief merits-based consideration of Defendant's claims.

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

handcuffed and arrested Defendant Javier Ayala, who was a passenger in the vehicle, and placed him in the back seat of a police cruiser for transport to a jail. En route to the jail, Defendant freed his right hand from the handcuffs and broke open a plexiglass divider separating the front and rear compartments of the cruiser by striking it with his fists and feet, fracturing his ankle in the process.[3] The transporting officer later testified that Ayala was trying to gain access to the driver's area, and the officer used his weapon and emergency driving procedures to keep Ayala in the car.

## ANALYSIS

Title 28 U.S.C. § 2255(f) imposes a one year time limitation on the filing of motions under this section. The one year period of time runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. In cases in which Defendant has filed a direct appeal, (1) if the prisoner files a timely petition for certiorari, the judgment becomes "final" on the date on which the Supreme Court issues a decision on the merits or denies certiorari, or (2) the judgment becomes final on the date on which the defendant's time for filing

---

[3] The PSR indicates that Defendant both fractured his wrist and broke his ankle during the incident (PSR ¶ 28).

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

such a petition expires, *i.e.,* ninety days after the entry of the court of appeals' judgment. Clay v. United States, 537 U.S. 522, 525 (2003); Kaufmann v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002). In this case, Defendant's convictions were affirmed on October 1, 2009, and the Supreme Court denied certiorari on December 6, 2010 (docs. 127, 131). Thus, the one year limitations period expired on December 6, 2011. The Defendant's § 2255 motion was filed on November 5, 2012, and therefore was facially untimely.

Unless Defendant establishes his entitlement to equitable tolling, his motion is time barred. Jones v. United States, 304 F.3d 1035, 1038 (11th Cir. 2002) (citing Akins v. United States, 204 F.3d 1086, 1089 (11th Cir. 2000)). Equitable tolling is appropriate when a § 2255 motion is untimely because of "extraordinary circumstances that are both beyond [the defendant's] control and unavoidable even with diligence." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)). Otherwise stated, a litigant is entitled to equitable tolling only upon a showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented the timely filing." Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The doctrine of equitable tolling applies only in "rare and exceptional circumstances" and is "typically applied sparingly." Hunter v. Farrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (quoting Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005)); *see also* Johnson, 340 F.3d at 1226 (citing Jones v. United States, 304 F.3d 1035, 1039–40 (2002); Drew, 297 F.3d at 1286). The onus is on the moving party to show that he

is entitled to this extraordinary relief. Hunter, 587 F.3d at 1308; Johnson, 340 F.3d at 1226. Defendant must show a causal connection between the alleged impediment or circumstance and his ability to file a timely motion. Hunter, 587 F.3d at 1308; Lawrence, 421 F.3d at 1226–27. The court will not relieve a petitioner who has sat upon his rights. United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000) (citing Coleman v. Johnson, 184 F.3d 398, 402–03 (5th Cir. 1999)).

The Government maintains that Defendant has shown neither that he has diligently pursued his rights nor that some extraordinary circumstance stood in his way and prevented the timely filing of the instant motion. Holland, 130 S.Ct. at 2562.

The court first addresses the question of "extraordinary circumstances." The Government asserts that the records submitted by Defendant from a four day period in 2011 fail to establish a longstanding medical condition rising to the level of extraordinary circumstances that would be sufficient to justify the application of equitable tolling. As noted above, Defendant has submitted four pages of documents dated between November 19 and November 21, 2011 (doc. 138 at 3–6). The first document is an Admission Notification from the Hospitalist Company in Johnson City, Tennessee, dated November 19, 2011 (*id*. at 3). It reflects that Defendant had an admit diagnosis of "stroke, thrombotic" and "tinea cruris" (*id*.). Next is a BOP Health Services Clinical Encounter Administrative Note ("Note") bearing the same date (*id*. at 4). This Note reflects that Defendant had a negative CT scan and that he was in the process of having an MRI (*id*.). Defendant was reportedly lethargic and unresponsive (*id*.). An Administrative Note dated the following day reflected no change in Defendant's condition, a "current dx [diagnosis]" of a stroke, and that

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

additional testing would be conducted (*id*. at 5). The final Administrative Note, dated November 21, 2011, reflects that no report was available from an "echo" (echocardiogram) and that Defendant was stable (*id*. at 6). Although Defendant was not talking, he was able to slightly move the affected side and follow commands (*id*.). The November 21 Note concluded by stating that no plan had been initiated or prognosis made, but that there would be continued follow-up (*id*. at 6).

The Government argues that the Administrative Notes submitted by Defendant are diagnostic, at best, and do not support his claim that he suffered a "massive stroke." Nor do they show anything about Defendant's medical condition beyond the dates reflected.

In the face of the Government's arguments, Defendant has submitted no other medical records or documentation which might have shed light on his condition from November 21, 2011, through the time he began communicating with the court (doc. 155). In his response, which is not sworn under penalty of perjury, he states that he currently is taking aspirin, simvastatin, and warfarin (each of which appear to be related to the stroke he purportedly suffered) and still has "limited physical and mental abilities" (*id*. at 2). Defendant appears to continue to rely on his condition as described in the Administrative Notes summarized above to excuse his delay in filing the instant § 2255 motion. These documents, which clearly are limited in scope and time, do not conclusively establish a serious medical condition constituting an "extraordinary circumstance" that prevented the timely filing of the instant motion.

Additionally, the court finds that Defendant has not established the diligent pursuit of his rights. If Defendant had not had the stroke, his § 2255 motion would have been due on or before December 6, 2011, one year from the date the Supreme

Court denied certiorari in his case. The stroke occurred within three weeks of this deadline. Nonetheless, from the time Defendant first communicated with the court in August of 2012 to request an extension of time to file his § 2255 motion, almost three months elapsed until the motion actually was filed, which suggests that Defendant had "very likely not begun, let alone completed, his § 2255 motion three weeks prior to its due date" when the stroke occurred (*see* doc. 149 at 9). If this is true, he plainly had failed to exercise diligence by that point.

It appears that Defendant believes that the November 2011 stroke should "re-start the clock" for filing his § 2255 motion, despite the fact that no impediment to timely filing existed until over eleven months after his conviction became final. A more reasonable position would be that equitable tolling applies only during that time period when the impediment or extraordinary circumstance actually exists. Under such an approach, once the impediment was removed, he would have had three weeks (of the one year limitation period) remaining in which to timely file his § 2255 motion. Defendant acknowledges that his legal materials were returned to him in May of 2012 (doc. 155 at 2). He also indicates that the § 2255 motion was researched and prepared by someone other than himself (*id*. at 3–4).[4] The fact that the motion was not filed until nearly three months after he first moved for an extension of time and close to six months after his legal materials were returned to him when arguably only three weeks of the limitations period remained does not establish the exercise of due diligence or justify the application of equitable tolling.

---

[4] Defendant does not mention linguistic difficulties, but the court notes that interpreters were appointed to assist him at trial and sentencing (docs. 56, 57, 66, 81).

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

In sum, Defendant failed to show a causal connection between the alleged impediment or circumstance and his ability to file a timely motion, or that he diligently pursued his rights. Hunter, 587 F.3d at 1308. Therefore, the application of equitable tolling is unwarranted and his motion should be dismissed as untimely. Nevertheless, as will be further discussed below, even if the court were to disregard the untimeliness of Defendant's motion, he still is not entitled to relief.

Although inartfully drafted, the two grounds for relief raised by Defendant relate to counsel's alleged ineffectiveness for his failure to make certain arguments at trial. Defendant first maintains that counsel's performance was constitutionally ineffective in that he failed to argue that Defendant's attempt to flee was not motivated by consciousness of guilt about the offenses charged in this case, but rather due to the fact that he was on bond for another crime at the time of the charged offense. Next, he asserts that counsel should have argued that Defendant was not aware of the offenses charged in this case until he reached the jail, so there could have been no consciousness of guilt with respect to these charges.

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant

fails to carry his burden on either of the two prongs. 466 U.S. at 697; Brown v. United States, ___ F.3d ___, 2013 WL 3455676 (11th Cir. July 10, 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). With regard to the prejudice requirement, the defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.

At the charge conference in this case, defense counsel objected to the proposed instruction regarding escape (doc. 114 at 206). The court overruled the objection and found that the instruction was supported by the evidence (*id*. at 206–207). During his closing argument, defense counsel attempted to minimize Defendant's conduct in the

law enforcement vehicle and explained it merely by saying that Defendant "feels like he's improperly being arrested, and he flips out and starts kicking" (doc. 114 at 248–49). Counsel thus characterized this not as an attempted escape, but as an irate reaction (*id*. at 249).

As one of the claims raised on appeal, Defendant argued that the district court erred in instructing the jury that it could consider evidence that he attempted to escape police custody as probative of his consciousness of guilt (*see* United States v. Ayala, 345 F. App'x 421, 422 (11th Cir. 2009). In rejecting Defendant's argument, the Eleventh Circuit noted that it had accepted that "a defendant's flight, escape, resistance to arrest, concealment, assumption of a false name, and related conduct as admissible evidence of "consciousness of guilt, and thus of guilt itself." *Id.* (quoting United States v. Wright, 392 F.3d 1269, 1277–78 (11th Cir. 2004) (quoting United States v. Borders, 693 F.2d 1318, 1324–25 (11th Cir. 1982)). It further noted, again citing Wright, that the probative value of the evidence concerning a defendant's flight, or attempted flight:

> depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

Ayala, 345 F. App'x at 422 (quoting Wright, 392 F.3d at 1278 (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir.1977)). The Eleventh Circuit concluded that the district court did not err in its determination that there was sufficient evidence supporting each of the inferences for the jury to consider Defendant's conduct in the police cruiser as probative of consciousness of guilt (*id*. at 422–23).

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

Defendant now asserts that counsel should have argued that it was the fact that Defendant was out on bond for another crime at the time of the charged offense, not his consciousness of guilt, or actual guilt, that led to his behavior in the patrol car. Defendant did not testify at trial (doc. 168–169) and thus none of his criminal history, other than the fact that he was a convicted felon, was before the jury. In order for counsel to have been able to make this argument, Defendant's arrest for the offense for which he was out on bond – "Burglary of Structure/Conveyance Unarmed without Person Inside" (*see* PSR ¶ 111) – would have to have been disclosed to the jury. The most reasonable vehicle for doing this would have been Defendant's own testimony. There were many potential disadvantages to Defendant testifying. Importantly, however, laying the foundation for this argument would have brought to the jury's attention and even highlighted the fact that not only was Defendant a convicted felon, but also that Defendant had been arrested at least once subsequent to that felony conviction. Conversely, because Defendant did not testify, there was no factual basis for counsel to make the argument Defendant now suggests. Some explanation of Defendant's behavior in the patrol car was needed. Counsel's decision to minimize his focus on Defendant's violent actions and to instead focus on perceived weaknesses in the Government's case was not a course that "no competent counsel would have taken." Gordon, 518 F.3d at 1301. Counsel's performance was not constitutionally infirm and Defendant is not entitled to relief.

Similarly, in his second ground for relief, Defendant faults counsel for counsel's failure to establish that Defendant was unaware of the offenses with which he ultimately was charged in this case until he reached the jail. Presumably, had this information been presented to the jury, it would have rebutted any presumption that

Defendant's attempt to flee was motivated by consciousness of or actual guilt. Again, the only way for counsel to have established what Defendant was or was not aware of, other than through the use of impermissible hearsay, would have been for Defendant to testify at trial. Defendant did not testify, and therefore counsel was not constitutionally ineffective for his failure to make this argument in light of the lack of evidentiary foundation for doing so. Defendant thus is not entitled to relief on the merits of his claims.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 3:08cr21/MCR; 3:12cv542/MCR/CJK

In light of the foregoing, it is **ORDERED**:

Defendant's motion requesting transcripts of the proceedings in this case (doc. 153) is **DENIED as moot**.

And based on the foregoing, it is respectfully **RECOMMENDED**:

1. The Government's motion to dismiss (doc. 149) Defendant's motion to vacate, set aside, or correct sentence (doc. 137) be **GRANTED**.

2. Defendant's motion to vacate, set aside or correct sentence (doc. 137) be **DENIED and DISMISSED.**

3. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 25th day of July, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).